IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:11-CV-36-BO

| | |
|---|---|
| LANIER CONSTRUCTION COMPANY, INC., ) ) ) Plaintiff, ) ) v. ) ) CITY OF CLINTON, NORTH ) CAROLINA, a municipality; and ) JOHN CONNET, individually and in his ) official capacity as Clinton City Manager, ) ) Defendants. ) | O R D E R |

This matter is before the Court on defendant's motion for summary judgment [DE 43]. For the reasons stated below, the defendants' motion is GRANTED.

## BACKGROUND

This case arises out of a dispute over the bidding process and contract award for a City of Clinton construction project. The project, partly funded by a USDA grant, included moving underground utilities, street resurfacing, and repairs to sidewalks and curbs. Plaintiff Lanier Construction Company alleges that its bid for this City of Clinton project was rejected because it is a company owned by African Americans. For over twenty-seven years, Lanier has specialized in public utilities, grading/road construction, site development, and road/street work for private and governmental clients. In 2010, the City of Clinton sought bids for its "Downtown Revitalization Phase III" project. Lanier was the lowest bidder on this project with a bid of $1,056,403.75. However, Paul Howard Construction Company, the next lowest bidder, with a

1

bid of $1,097,300.00, ultimately won the contract. Paul Howard Construction Company is non-minority owned.

The bidding process was managed by The Wooten Company, a firm contracted by the City of Clinton. The 2010 bidding process was the second time that this project had been put out to bid. In 2009, the City of Clinton solicited bids for the same project. At that time, Lanier submitted the lowest bid of $1,431,811.00. After the 2009 bids were received, the project was delayed and all bids were rejected. The reason for this delay is disputed.

Following Lanier's 2010 bid, Wooten's Project Engineer informed Lanier that it had been recommended for award of the final contract. However, pursuant to a background check procedure, Clinton City Manager John Connet personally investigated the qualifications of Lanier and a competing bidder and submitted a memorandum to the City Council on November 23, 2012. In his memo, Mr. Connet recommended a rejection of Lanier's bid because Lanier was not the lowest "responsible" bidder. [DE 3, p.5]. The background check conducted by Mr. Connet was a relatively new procedure that had been spurred by recent difficulties with contractors in other city projects. Mr. Connet believed that those difficulties could have been avoided if a simple background check had been conducted prior to commencing construction. Other projects for which Mr. Connet conducted similar background procedures included the Royal Lane Park restrooms construction, construction at the Clinton-Sampson County Airport, and building demolition at the Hamilton Beach facility site. Further, when an architect was hired to renovate City Hall, Mr. Connet thoroughly investigated his prior work and even physically inspected some of his prior construction sites.

As part of the background check, Mr. Connet requested the following information from former clients of both Lanier and Paul Howard Construction Company:

(1) When did the project take place;
(2) A brief description of the project;
(3) Whether the project was started and completed on time;
(4) How the client rated the contractor's work overall;
(5) Whether the client would hire the contractor again;
(6) Whether liquidated damages were assessed;
(7) Whether there were an excessive number of change orders and, if so, why;
(8) Whether any legal action was taken against the contract and, if so, how it was resolved;
(9) How the client rated the contractor's project management abilities; and
(10)   Whether the client was pleased with the outcome of the project.

Although both Lanier and Paul Howard Construction Company supplied references, Mr. Connet independently investigated projects completed by each contractor because he felt that would provide the most accurate examples of the contractors' respective work. Mr. Connet sought out completed projects that were similar to the work scheduled in Clinton and in towns with which he was familiar. Mr. Connet's investigation revealed that four of the five references contacted for Lanier reported that the contractor's work was not completed in the scheduled timeframe and resulted in liquidated damages being assessed. Three former clients, Ayden, Wake Forest, and Farmville, stated that they would not be willing to hire Lanier again. On the other hand, none of Paul Howard Construction Company's former clients contacted by Mr. Connet stated that they would not be willing to re-hire the company. Further, three of the four references stated that Paul Howard Construction Company had completed their projects within the scheduled timeframe. The one project that ran over time did not result in the assessment of liquidated damages and was attributable to adverse weather conditions.

In his memorandum summarizing the findings of his background check, Mr. Connet stated that the 3% difference in total bid cost was a small price to pay given the significantly more favorable reviews of Paul Howard Construction's performance. As such, Mr. Connet recommended that the City Council reject Lanier's bid and accept Paul Howard Construction's

3

bid. Lanier has alleged that Mr. Connet's memorandum summarizing the background check was incorrect and misleading. In the memorandum, Mr. Connet told the City Council that "Lanier Construction had four out of five projects that were not completed within the time specified in the contract and resulted in liquidated damages." Lanier contests Mr. Connet's assertion that he had "completed a thorough reference and corporate background check of the two lowest bidders." [DE 3, p.25]. The City Council placed the matter on its agenda for its December 7, 2010 meeting. Lanier was not notified of the meeting.

At the City Council meeting, the City Council unanimously adopted Mr. Connet's recommendation and rejected Lanier's bid. [DE 3, p.5]. At that meeting the City Council also voted to award the contract to the next lowest bidder – Paul Howard Construction Company. Lanier was first notified that it did not receive the award in a letter from Mr. Connet. That letter explained that Lanier was not a responsible bidder, given the quality of its work, and its performance and timeliness on previous projects.

On February 1, 2011, Lanier's attorney appeared at a City Council meeting and attempted to rebut Mr. Connet's memorandum. Prior to this appearance, owner Henry Lanier independently contacted two members of the City Council – Mayor Pro-Tem Maxine Harris and Councilman Marcus Becton. Mr. Lanier stated that the reason he contacted Mrs. Harris and Mr. Becton was because they were African-American and "African Americans can relate to other African American situations" because they have "experienced discrimination or whatever . . ." [Lanier Depo. p. 56]. During the February 1st City Council meeting, Mrs. Harris and Mr. Becton moved to delay the scheduled March 7, 2011 construction start date, pending further deliberation of the matter. The remaining three council members (all Caucasian) voted to reject the motion, affirming the Council's December 7, 2010 decision. [DE 3, p.7]. Lanier alleges that its bid was

4

rejected because it is an African-American owned business and seeks damages. Mr. Lanier, however, has conceded that the information reported by Mr. Connet to the City Council was accurate in many regards. For example, Mr. Lanier has admitted that Lanier Construction failed to complete four of the five jobs referenced by Mr. Connet within the scheduled timeframe. Mr. Lanier has also admitted that the clients assessed liquidated damages against Lanier Construction on three of the four projects that ran over their allotted timeframe. [Lanier Depo. pp.42-47].

Since the bid was awarded to Paul Howard Construction, Mr. Connet has testified that he did not consider race as a factor in making his recommendation to the City Council. Mr. Connet has also testified that during his career as a city manager he had recommended awarding contracts to minority-owned businesses. Moreover, Mr. Connet was responsible for hiring the first two African-American department heads to serve the City of Clinton.

## PROCEDURAL HISTORY

Plaintiff filed its complaint on March 4, 2011. In its complaint the plaintiff named the City of Clinton, Paul Howard Construction Company, and John Connet as defendants. The plaintiff listed the following causes of action in is complaint: (1) violations of the equal protection clause of the Fourteenth Amendment; (2) procedural and substantive violations of the due process clause of the Fourteenth Amendment; (3) a claim under 42 U.S.C. § 1983; (4) a claim under 42 U.S.C. § 1981; (5) the award of attorneys' fees under 42 U.S.C. § 1988; (6) a claim under North Carolina General Statutes § 143-129; (7) defamation; and (8) interference with prospective contractual relations. That same day the plaintiff also requested a preliminary injunction and a temporary restraining order.

On March 25, 2011, this Court entered an Order denying the plaintiff's motion for a temporary restraining order. On March 29, 2011, Paul Howard Construction Company filed a

5

Case 4:11-cv-00036-BO   Document 56   Filed 02/20/13   Page 5 of 13

motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). On April 27, 2011, this Court entered an Order denying the plaintiff's motion for a preliminary injunction and granting Paul Howard Construction Company's motion to dismiss. On May 3, 2011, Defendants City of Clinton and John Connet filed a motion to dismiss pursuant to Rule 12(b)(6). By their motion to dismiss, the City of Clinton and Mr. Connet sought the dismissal of the plaintiff's claims for (1) due process violations; (2) defamation; (3) interference with prospective contractual relations; and (4) breach of contract. On September 6, 2011, this Court entered an Order granting the defendant's motion for dismissal of those claims. Following the entry of that Order, the following of plaintiff's claims remained live in this action: (1) claims under 42 U.S.C. § 1981; (2) claims under 42 U.S.C. § 1983; and (3) claims under North Carolina General Statutes §143-129.

Now, the defendants seek summary judgment on the remaining live claims against them. As there are no disputed issues of material fact and the defendants are entitled to judgment as a matter of law, summary judgment is granted in favor of the defendants.

## DISCUSSION

A motion for summary judgment shall not be granted unless there are no genuine issues of material fact for trial. Fed.R.Civ.P. 56; *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party must demonstrate the lack of material factual dispute, and if that burden is met, the party opposing the motion must "go beyond the pleadings" and come forward with evidence of a genuine factual dispute. *Celotex*, 477 U.S. at 324. The Court must view the facts and the inferences drawn from the facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). Conclusory

allegations are not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

I. PLAINTIFF'S CLAIMS UNDER 42 U.S.C. §§ 1981 AND 1983.

Section 1983 provides a statutory basis to receive a remedy for the deprivation of a right "secured by the Constitution and laws" of the United States by a person acting under color of state law. *Zombro v. Baltimore City Police Dept.*, 868 F.2d 1364, 1366 (4th Cir. 1989)(quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600 (1979). In *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978), the Supreme Court articulated the boundaries of § 1983 and found that a theory of municipal liability does arise under 42 U.S.C. § 1983. Under § 1983, a state actor may be held liable if that actor "subjects, or causes to be subjected" an individual "to the deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. Section 1983, however, does not create any new right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002).

In *Monell*, the Supreme Court held that a local governmental actor cannot be subjected to vicarious liability under § 1983. However, the Court found that direct liability does attach under § 1983 where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . " *Monell*, 436 U.S. at 694. In other words for a plaintiff to have recourse against a municipality under § 1983, he must show a constitutional injury cause by a municipal policy or custom. *See id.* Such causes of action are commonly referred to as *Monell* claims.

Similar to § 1983, 42 U.S.C. § 1981 guarantees all persons "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens.' 42 U.S.C. § 1981(a). This right

7

includes "the making, performance, modification, and terminations of such contracts" and "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.' 42 U.S.C. § 1981(b).

Discrimination claims brought under §§ 1981 and 1983 are analyzed under the same framework used in Title VII cases. *See Gairola v. Virginia Dep't of Gen. Serv.*, 753 F.2d 1281, 1285 (4th Cir. 1985). In a race discrimination case, such as the one presented here, plaintiffs may avoid summary judgment by offering direct evidence of intentional discrimination or by proceeding under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Here, the plaintiff has presented no direct evidence and so must proceed under the indirect mode of proof.

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to proffer a legitimate, non-discriminatory explanation for its actions. If the defendant succeeds, the plaintiff may avoid summary judgment by showing that the asserted justifications were merely pretextual. *Williams v. Staples, Inc.*, 372 F.3d 662, 667 (4th Cir. 2004).

a. **Plaintiff has failed to establish a prima facie case of discrimination.**

In order to establish a prima facie case for discrimination under § 1981, the plaintiff must show that (1) it is a member of a protected class; (2) it sought to enter into a contractual relationship with the defendant; (3) it met the defendant's ordinary requirements to enter into a contract with it; (4) it was denied the opportunity to enter into a contract with the defendant that was otherwise afforded to companies owned by whites. *See Williams*, 372 F.3d at 667-68. Similarly, in order to establish a prima facie case of discrimination under the equal protection clause, a § 1983 plaintiff must show: (1) that it is a member of a protected class; (2) it is

8

otherwise similarly situated to members of the unprotected class; and (3) it was treated differently from members of the unprotected class. *See McMillian v. Svetanoff*, 878 F.2d 186 (7th Cir. 1989).

It is undisputed that the plaintiff, as a company owned by African Americans, is a member of a protected class. However, the plaintiffs have failed to establish a prima facie case because they have failed to show that Lanier either met the requirements to be a lowest responsible bidder or was treated differently from non-minority owned companies. It is undisputed that some of Lanier's past projects resulted in disputes or were not completed to the satisfaction of the client. Such past poor performance provided a proper basis upon which to refuse the bid.

In addition, there is no evidence that protected and non-protected classes were treated differently in the bidding process – either in 2009 or 2010. In 2010, each company – Lanier and Paul Howard Construction – was inspected with equal rigor, and Lanier was not subject to additional scrutiny. There is no evidence that non-minority owned companies received similarly poor performance evaluations and yet were subsequently award contracts. Further, plaintiff's argument that the delay of the project following the 2009 bidding process was discriminatory is unfounded – all the bids were rejected at that time, not just the bid entered by Lanier. For those reasons, the plaintiff has failed to establish a prima facie case of discrimination. Therefore, summary judgment in favor of the defendants is proper on both the plaintiff's §1981 and § 1983 claims.

    b. **Plaintiff has not shown that the defendants' justifications for rejecting its bid were mere pretext for racial discrimination.**

Assuming, *arguendo*, that the plaintiff had established a prima facie case for discrimination its case nevertheless fails as it has not shown that the defendants' justifications for

9

Case 4:11-cv-00036-BO   Document 56   Filed 02/20/13   Page 9 of 13

rejecting the bid were pretextual. In determining whether such justifications are pretexual the Court looks to the perception of the decision maker; the plaintiff's assessment of the reasoning is irrelevant to the inquiry. *Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 280 (4th Cir. 2000). Moreover, "a plaintiff's own assertions of discrimination in and of themselves are insufficient to counter substantial evidence of legitimate nondiscriminatory reasons for an adverse employment action." *Hawkins*, at 281 (quoting *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 456 (4th Cir. 1989).

Here, pretext might be shown if Mr. Connet or the City Council fabricated poor performance reviews reflecting inaccurate assessments of Lanier's past work. Pretext might also be shown if Mr. Connet presented only the poor reviews of Lanier's performance while holding back positive reviews. These scenarios, however, do not reflect reality. The evidence supports the credibility of the performance reviews collected by Mr. Connet. For instance, Mr. Mitchell has testified that he supplied a negative review of Lanier's work. Further, Mr. Lanier himself conceded that four of the five reviewed projects were not completed within the scheduled timeframe. Additionally, Mr. Connet presented both negative and positive reviews of Lanier's work to the council. The plaintiff has not presented evidence showing that Mr. Connet's justification for recommending the rejection of Lanier's bid was pretextual. Rather, the justifications supplied by Mr. Connet are supported as proper by the evidence. As such, Mr. Connet is entitled to summary judgment in his favor.

### c. Plaintiff's claims against defendant City of Clinton fail as Lonell has failed to establish the *Monell* element of its § 1983 claim.

As noted above, liability under § 1983 arises where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury. . . " *Monell*, 436 U.S. at 694. The plaintiff must show a constitutional injury cause by a municipal policy or custom. *See id.*

10

Here, plaintiff has failed to offer any evidence of an official policy or persistent practice of racial discrimination by the City of Clinton in awarding public contracts. The evidence presented in this matter is almost entirely limited to the exchange between the two parties on a single disputed bidding event. As the plaintiff has offered no evidence of a practice or policy, summary judgment in favor of the defendants on this claim is appropriate.

II. DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S STATE LAW CLAIMS.

In North Carolina, municipal contracts are awarded pursuant to the procedure set forth in N.C.G.S. § 143-129. That statute states, in pertinent part:

> Proposals may be rejected for any reason determined by the board or governing body to be in the best interest of the unit. However, the proposal shall not be rejected for the purpose of evading the provisions of this article. . . All proposals shall be opened in public and the board or governing body shall award the contract to the lowest responsible bidder or bidders, taking into consideration quality, performance and the time specified in the proposals for the performance of the contract.

North Carolina courts have interpreted this statute to confer great discretion upon municipal officers as they award contracts. Therefore, it has become a "general rule that officers of a municipal corporation, in the awarding of municipal contracts, perform not merely ministerial duties but duties of a judicial and discretionary nature, and that courts, *in the absence of fraud or a palpable abuse of discretion*, have no power to control their action." *Kinsey Contracting Co., Inc. v. Fayetteville*, 106 N.C.App. 383, 384 (1992)(emphasis added). The *Kinsey* court also provided a definition for "responsible" in the public bidding context: "skill, judgment and integrity necessary to the faithful performance of the contract, as well as sufficient financial resources and ability." *Id.* at 385.

Plaintiffs presented their interpretation of the statute and the case law to the Court:

> Under N.C.G.S. § 143-129 Clinton was required to review the qualifications of the low bidder without a comparison to other bidders under both the bid 1 and bid

11

> 2 request for proposals. The City was required to make an analysis of the lowest bidder's responsiveness to the bid itself and make a determination as to whether Lanier was a "responsible" contractor. Only upon an objective determination of a contractor's inability to be responsible or a legitimate basis which is not utilized simply to avoid compliance with the statute would the City be allowed to reject the lowest bidder and move forward to an analysis of the next lowest bidder.

The plaintiff's legal conclusions are convoluted and not supported by the case law – notably, the plaintiff does not cite a single case in support of its position that the city may only consider one bidder without comparison to any other. The Court finds no precedent to suggest that the municipal officers first must determine whether the lowest bidder meets the standard of responsibility before it may consider other bids. Moreover, the Court finds that one of the key advantages of the public bidding process is to allow for the comprehensive evaluation of multiple proposals in one sitting. In addition to arguing against the comparison of its bid against others presented to the city, the plaintiff also argues that the city abused its discretion by failing to review a sufficient number of Lanier's past projects.

In *Kinsey*, a case relied upon by both parties, an appeals court affirmed the trial courts finding that the defendant had not abused its discretion in its award of a public contract. In that case, the trial court compared two bidders – the plaintiff and Crowder Construction – and offered the following summary:

> Plaintiff has failed to submit . . . a copy of an audited financial statement, a list of any pending claims, resumes of supervisory personnel which the plaintiff intended to assign to the construction project, or the identity of the proposed excavation contractor the plaintiff intended to use to perform the excavation work required by the contract. Crowder Construction Company, Inc. timely submitted all information requested by Black & Veatch.

*Kinsey*, 106 N.C.App. 383, 386 (1992). The *Kinsey* court required no showing that the city's review of the bid had satisfied some threshold of completeness. That the city had found the plaintiff's failure to submit certain documentation to the bidding administrator unsatisfactory

12

was a sufficient justification to reject the bid. There was no requirement that the city conduct an extended and reaching discovery period before rejecting the bid. Pursuant to the statute, any single reason may justify rejecting a bid. Here, as in *Kinsey*, the defendants compared bidders and found the lowest bidder not to be the lowest responsible bidder. This decision was based on an evaluation of the plaintiff's past work. The Court finds no fraud or abuse of discretion in this decision. As such, summary judgment is granted in favor of the defendants.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is GRANTED. As no live claims remain in this matter, the clerk is directed to close the file.

SO ORDERED, this 20 day of February, 2013.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE